UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>HELEN MURRAY,<br><br>Defendant | Criminal No. 26-10044-IT |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through the undersigned Assistant U.S. Attorney, requests that the Court sentence defendant, Helen Murray (hereinafter, "defendant" or "Murray"), to two years' probation; a mandatory special assessment of $100; restitution of $72,131; and forfeiture. These are the terms which were set out in the Plea Agreement between the parties (Dkt. No. 5).

I.     Advisory Sentencing Guidelines

The government's position with respect to the Sentencing Guidelines, which is set forth on page 2 of the Plea Agreement, is that the defendant's total "offense level" under the Guidelines is 9:

(i)     in accordance with USSG § 2B1.1(a)(1), defendant's base offense level is 7, because the offense of conviction has a statutory maximum term of imprisonment of 20 years or more;

(ii)    in accordance with USSG § 2B1.1(b)(1)(D), defendant's offense level is increased by 6 levels, because the loss amount is more than $40,000 but less than $95,000;

(iii)    in accordance with USSG § 3E1.1, defendant's offense level is decreased by 2 levels because the defendant has accepted responsibility for defendant's crime; and

(iv)    in accordance with USSG § 4C1.1(a), defendant's base level is decreased by 2 levels because the defendant meets the criteria for a zero-point offender.

Accordingly, the total offense level is 9.  Murray's criminal history category is I.  This results in a GSR of 4 to 10 months' imprisonment, which under USSG §5C1.1(c), can be satisfied by a sentence of probation that includes a condition or combination of conditions that substitute intermittent confinement, community confinement, or home detention for imprisonment according to the schedule in USSG §5C1.1(e).  Presentence Investigation Report ("PSR") at ¶ 58.  A special assessment of $100 is mandatory under 18 U.S.C. § 3013.  PSR at ¶ 67.  Additionally, pursuant to 18 U.S.C. § 3663A, restitution in the total amount of $72,131 shall be ordered in this case; restitution of $72,131 is owed to the Boston Housing Authority.  PSR at ¶ 70.

II.    Factual Background

Murray served as an executive secretary at the Boston Housing Authority ("BHA") from 2017 to September 2024, though she began working there years earlier in 2009.  PSR at ¶ 9.  As an executive secretary, Murray was eligible to receive overtime pay.  PSR at ¶ 10.  Any overtime Murray worked first had to be pre-approved by her senior manager.  PSR at ¶ 10.  Once pre-approved, to receive overtime pay, Murray was required to accurately and truthfully complete an overtime form which she would then send to her immediate supervisor.  PSR at ¶ 10.  The supervisor was then required to approve that form (and Murray's overtime pay) by electronically signing it.  PSR at ¶ 10.

Despite working for the BHA for nearly fourteen years, in 2023, Murray breached the trust of the BHA and her colleagues: starting in January 2023, Murray began submitting false overtime forms to BHA payroll, PSR at ¶ 13. Subverting the overtime protocol, Murray began entering overtime hours she had not worked on overtime forms; falsifying her supervisor's electronic signature on those forms; and submitting those forms directly to BHA payroll. PSR at ¶ 13. This fraud scheme continued until, in late August or early September of 2024, the supervisor uncovered it when she discovered overtime forms for Murray that she knew she had not approved. PSR at ¶ 15.

In all, between January 2023 and August 2024, Murray submitted over 100 falsified overtime forms, PSR at ¶ 13, and collected over $85,488 in overtime pay, PSR at ¶ 12. Of that $85,488, only approximately $13,357 was properly approved; the remaining $72,131 was fraudulently collected. PSR at ¶ 12. For reference, in 2021, Murray received a total of $1,065 in overtime pay and in 2022, Murray received a total of $22,225 in overtime pay. PSR at ¶ 11. During the pertinent time period, Murray's salary was roughly $60,000 per year. *See* PSR at ¶ 11.

It is also troubling that Murray defrauded the BHA – a government agency that provides direct services to low-income Boston residents and for whom the public trust is critical. Victim Impact Statement, 1-2, attached as Attachment A. Murray's actions both deprived the BHA of valuable funds and threatened its reputation with the Boston community and other stakeholders. Victim Impact Statement, 1-2.

While Murray's actions in 2023 and 2024 merit punishment, Murray's personal history does illuminate a strong work ethic during other periods of her life. Murray dropped out of school after completing the 10th grade in the Boston Public School System, though she later returned to her education and received her GED in 2006. PSR at ¶ 48. Murray worked for the BHA without

apparent incident for nearly 14 years, PSR at ¶ 9 – a substantial portion of her adult life. And, after resigning from her position at the BHA in 2024, PSR at ¶ 9, Murray quickly obtained employment as an assistant property manager for a property management company, PSR at ¶ 51. Murray held that position until this past March, when she was terminated from that role due to the instant offense. PSR at ¶ 51. But, Murray again quickly found new employment, and as of April 2026 Murray has been employed as a clinic/practice assistant for a medical provider in Boston. PSR at ¶ 49. Murray has four young children, PSR at ¶ 42, 43, and her income is an important component of her household finances. *See* PSR at ¶ 55.

II.    18 U.S.C. § 3553 Factors

The defendant's admission of her conduct has already resulted in the loss of employment obtained after resigning from the BHA, and it will likely limit future employment opportunities open to Murray.

While Murray committed a serious offense, since being contacted by federal authorities, she has admitted her conduct, and she has accepted responsibility for her conduct.

Under these circumstances, and given Murray's own personal history and characteristics, specific deterrence will be served by a sentence of probation. General deterrence will also be served by this sentence, given the permanence of a federal conviction. The government believes that probation and restitution and forfeiture as per the Plea Agreement is thus sufficient but not greater than necessary to acknowledge the seriousness of the offense, justly punish the defendant, protect the public, and promote respect for the law. Accordingly, the government respectfully requests that the Court impose probation, restitution, and forfeiture, as per the terms of the Plea Agreement.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By:  /s/ Dustin Chao
DUSTIN CHAO
Assistant U.S. Attorney